**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**AMBER JACOBS**                                                                                          **PLAINTIFF**

**V.**                              **NO. 4:24-CV-00396-LPR-PSH**

**COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, Amber Jacobs, filed an application for Title II disability and disability insurance benefits on August 26, 2021, in which she alleged disability beginning on August 26, 2021. (Tr. at 14). The application was denied initially and

1

upon reconsideration. *Id*. After conducting a hearing on March 9, 2023, an Administrative Law Judge ("ALJ") found that Ms. Jacobs was not disabled. (Tr. at 14-25). On March 28, 2024, the Appeals Council denied Ms. Jacobs' request for review of the hearing decision. (Tr. at 1-6). This decision now stands as the final decision of the Commissioner, and Ms. Jacobs has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision and enter judgment for Defendant.

## II. The Commissioner's Decision:

Ms. Jacobs meets the insured status requirement of the Social Security Act through December 31, 2026. (Tr. at 16). The ALJ found that Ms. Jacobs had engaged in substantial gainful activity during the following period: October 2021 through December 2021.[1] (Tr. at 17). However, there had been a continuous 12-month period during which Ms. Jacobs did not engage in substantial gainful activity. *Id*. The ALJ stated that his findings address the period in which Ms. Jacobs did engage in SGA. *Id*. At Step Two, the ALJ found that Ms. Jacobs had the following severe

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity ("SGA"); (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

2

impairments: osteoarthritis, obesity, and disorders of the back. *Id*.

After finding that Ms. Jacobs's impairments did not meet or equal a Listing,[2] the ALJ determined that Ms. Jacobs had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with the following additional limitations: (1) she can no more than occasionally stoop, crouch, climb, balance, kneel, and crawl; 2) she can perform complex or detailed tasks involving 5 to 6 variables; (3) she can understand, remember, and carry out instructions without limitations; (4) she is able to exercise considerable independent judgment and requires little or no supervision; 5) she is able to interact with supervisors, coworkers, and the public on a frequent basis; and (6) she is able to adjust to changes in a medical work setting. (Tr. at 18-19).

The ALJ determined that Ms. Jacobs was unable to perform any past relevant work. (Tr. at 23-25). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Jacobs's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as receptionist, data entry clerk, and appointment clerk. *Id*. Thus, the ALJ found that Ms. Jacobs was not disabled. *Id*.

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B.  Ms. Jacobs' Arguments on Appeal

Ms. Jacobs contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ did not properly consider or discuss Ms. Jacobs' obesity.[3]

Ms. Jacobs, who had worked as a nurse in the past, weighed in the range between 325 and 400 pounds during the relevant time-period, and she is 5'3". (Tr. at 19-21, 219-222, 586, 597-598, 637). Her body mass index ("BMI") is over 60. *Id*. The ALJ noted that this BMI is more than double the level of presumptive obesity. (Tr. at 21). In the same breath, the ALJ duly acknowledged that obesity was causing

---

[3] The Court will limit its discussion to Ms. Jacobs' impairment of obesity. *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

5

fatigue and aggravating Ms. Jacobs' arthritis. *Id*.

X-rays of the knees and spine showed degenerative joint disease. (Tr. at 597-606). A lumbar spine MRI showed foraminal narrowing and canal stenosis with bulging disc. (Tr. at 572). At doctors' visits in late 2022, Ms. Jacobs had reduced range of motion in her knees, hips, shoulders, and spine (at other times, range of motion was normal). (Tr. at 763-770). In that same time frame, her doctor noted obesity due to excess calorie intake. (Tr. at 717). Ms. Jacobs did lose up to 75 pounds during the relevant-time period, but she still could not get down to the maximum required weight of 250 pounds for gastric, spine, or knee surgery. (Tr. at 222-223). In 2023, she got pregnant, so at that point, weight loss efforts and surgery were off the table. *Id*. Notably, although Ms. Jacobs obesity made it difficult to perform many physical activities (Tr. at 429-434), she could drive short distances, do grocery pickup, attend doctors' appointments, and get pregnant and deliver a baby.[4] (Tr. at 18, 222, 429-434).

### A. Listings

Ms. Jacobs contends that obesity met a Listing at Step Three. The Listings define impairments that would prevent an adult, regardless of her age, education, or

---

[4] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

work experience, from performing any gainful activity, not just "substantial gainful activity." . . . That is, if an adult is not actually working and her impairment matches or is equivalent to a listed impairment, she is presumed unable to work and is awarded benefits without a determination whether she actually can perform her own prior work or other work. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). At Step Three, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that her impairment matches all of the specified medical criteria of a Listing. *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). An impairment is "medically equivalent" to a Listing if the medical findings are at least equal in severity and duration to the listed criteria. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

There is no listing for obesity, but it could medically equal a Listing. SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). The ALJ in this case found that Ms. Jacobs' obesity, either singly or in combination with her other impairments, did not equal the Listings relating to musculoskeletal disorder, including Listings 1.15, 1.16, and 1.18 (Tr. 19). He noted that Ms. Jacobs had severe spine and joint problems, but that she was not prescribed things like a walker or cane, and did not show an inability

to use one or both upper extremities to such an extent that she cannot independently initiate, sustain, and complete work-related activities involving fine and gross movements. *Id*.

Indeed, the medical record does not suggest that Ms. Jacobs impairments equaled a Listing. During a consultative examination performed by APRN Tiffany Lack, on January 22, 2022, Ms. Jacobs had full strength in her grip and upper extremities. (Tr. at 597-604). She could perform fine motor skills with no problems.[5] *Id*. She showed full range of motion in her spine, shoulder, elbows, wrists and hands. *Id*. The consultative examiner noted that Ms. Jacobs could sit comfortably, and arise without difficulty, and get on and off the exam table with no problems. *Id*. Ms. Jacobs declined to perform certain tests due to pain. *Id*. However, the examiner noted that, in spite of increasing pain from joint degeneration, Ms. Jacobs did not seek regular or aggressive treatment. *Id.* She claimed this was due to a lack of health insurance, but there is no indication that she sought out free or low-cost treatment.[6] *Id*. While Ms. Jacobs had a positive straight-leg raise at the examination, she told

---

[5] Ms. Jacobs testified at the hearing that she could not grasp a pen or hold her phone. (Tr. at 227). The state agency medical consultants found that Ms. Jacobs had no manipulative limitations, which aligns with the consultative examiner's findings. (Tr. at 249, 258). Ms. Jacobs' allegations about manipulative problems are not supported by the record.

[6] *See Murphy v. Sullivan*, 953 F.2d 383, 386-7 (8th Cir. 1992).

APRN Lack that she did not use an assistive device for ambulation. *Id.*

The examiner concluded that Ms. Jacobs would be limited to only occasional sitting, standing, and walking, and no lifting or carrying. (Tr. at 603). The ALJ found the examiner's opinion to be unpersuasive; he stated that the medical record did not suggest such limitations and the RFC for sedentary work incorporated the objective evidence of record. (Tr. at 22). The Court also notes that the examiner's limitation to "occasional" sitting, walking, and standing is not specific in the context of an RFC. Usually, a doctor will place a time, distance, or weight limit on functional ability. The ALJ explained how he considered whether Ms. Jacobs' obesity met or medically equaled a Listing. He did not err.

### B. RFC

With respect to the RFC, Ms. Jacobs says she could not perform the work associated with the assigned RFC.[7] She avers that it did not incorporate all of her limitations, especially those related to obesity. SSR 19-2p explains that obesity may

---

[7] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

result in limitations to physical functional capacity, and it could make a person intolerant to heat, humidity, or other workplace hazards. See SSR 19-2p, 2019 WL 2374244, at *4. The ALJ stated that he considered this SSR in making his findings. (Tr. at 19).

In support for her RFC claim, Ms. Jacobs points to her treating physician's opinions. Evelyn Cathcart, M.D., started treating Ms. Jacobs in 2019. She provided routine and conservative treatment, consisting of medication management and follow up appointments every six months.[8] (Tr. at 585-588, 617-620, 635). Ms. Jacobs told Dr. Cathcart that Tramadol helped to control pain.[9] (Tr. at 620). Dr. Cathcart's records did not indicate edema or swelling in Ms. Jacobs' legs, contrary to Ms. Jacobs' statements. (Tr. at 586, 618, 621). Clinic musculoskeletal examinations at Ms. Cathcart's office were generally unremarkable. (Tr. at 561, 586, 599-692, 723, 775, 781, 787).

However, Dr. Cathcart opined in August 2022, that based upon osteoarthrosis and degenerative joint disease, that Ms. Jacobs would have extreme limitations in all physical functions, and she could not perform even sedentary work. (Tr. at 625-

---

[8] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[9] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

630). She said that Ms. Jacobs would have to lie down and elevate her legs throughout the day. *Id*. The ALJ found this opinion to be unpersuasive, specifically because many of the clinic examinations showed grossly normal ROM, sensory testing, and reflexes. (Tr. at 23). Ms. Jacobs' gait was often abnormal or antalgic, but the consultative examiner noted that she did not walk with an assistive device. The ALJ's RFC for sedentary work with a limitation to occasional stooping, crouching, climbing, balancing, kneeling, and crawling captures the record evidence better than Dr. Cathcart's opinion. The Court concludes that the RFC was well-supported.

### C. Subjective Complaints

Finally, Ms. Jacobs contends that the ALJ did not fully consider or discuss her subjective complaints.[10] The ALJ found that her subjective complaints of disabling conditions were inconsistent with the evidence. (Tr. at 20, 625-630). For example, Ms. Jacobs said that she could only walk ten feet before she had excruciating pain, but Dr. Cathcart said she could walk 25 yards. (Tr. at 231, 627). She told the ALJ at

---

[10] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

the hearing that she used an assistive device, but she told APRN Lack she did not use one. (Tr. at 232, 600). She did not require aggressive treatment or specialist intervention from a nutritionist, an orthopedic, or a physical therapist. (Tr. at 21). Moreover, although Ms. Jacobs weighed too much to qualify for surgeries, her doctor noted excessive calorie intake; additionally, Ms. Jacobs continued to smoke a half-pack of cigarettes per day even though her doctors told her that caused more problems with obesity and cardiac health. (Tr. at 40, 711-713). Also, Ms. Jacobs told her providers that medication made her pain tolerable. (Tr. at 585, 757). Clinic examinations were often unremarkable. The ALJ properly considered Ms. Jacobs' subjective complaints.

While this is a bit of a close case, there were inconsistencies between the medical evidence and Ms. Jacobs' own allegations, and the objective findings from multiple medical experts undermined assertions of total disability. The ALJ acted within his zone of choice and properly considered the record, as a whole, in finding that Ms. Jacobs was not disabled. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (As long as the ALJ's decision falls within the available zone of choice, the Cour will not disturb it even if it might have reached a different conclusion had it been the initial fact finder); *see also Johnson v. Berryhill*, No. 16-CV-2026-LTS, 2017 WL 3951640 (N.D. Iowa Sept. 8, 2017) (sedentary RFC accounted for obesity

and complaints of pain).

## III. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Jacobs was not disabled. The ALJ properly considered and discussed Ms. Jacobs' obesity. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 28th day of April, 2025.

_____
UNITED STATES MAGISTRATE JUDGE